## In re Ukranian Catholic American Citizens Society

*Edward D. McLaughlin* and *Donald H. Hamilton*, for appellants.

*Martin F. Hatch*, Special Deputy Attorney General, for Liquor Control Board.

MACDADE, P. J., April 29, 1944.—During August 1943, say, the 11th, this appellant, Ukranian Catholic American Citizens Society, a nonprofit corporation located at 2817-29 West Second Street, Chester, Pa., being incorporated on March 26, 1942, filed an application with the Pennsylvania Liquor Control Board for a new club liquor license.

After a hearing in the usual fashion and according to the procedural practice under the act of assembly governing such matters, the said board did, on November 18, 1943, refuse to grant the prayer of said application for club liquor license and ascribed the following reason therefor:

"1. The quota of retail licenses for the City of Chester is exceeded. Therefore, the board is prohibited from issuing any new retail licenses, except for hotels, in this municipality."

The Liquor Control Board granted leave to applicant to waive a hearing before an examiner for the board as required by law, and this appeal was then filed. A hearing was held and testimony taken before the undersigned as president judge of the court on December 17, 1943.

The applicant has met all the physical and other requirements of the Pennsylvania Liquor Control Board Act pertaining to club applicants for liquor licenses.

The population of the City of Chester, according to the 1940 United States Decennial Census, is 59,285. The quota of retail licenses calculated in accordance with the provisions of the Liquor License Quota Act of June 24, 1939, P. L. 806, is 60. The total number of

retail licenses now in effect in said city is 113. In addition thereto there are 12 hotel liquor licenses, 24 club liquor licenses, three club catering licenses, and one club malt beverage license in effect in said city, or a grand total of 153 licenses in the City of Chester as against the quota of only 60. . . .

From the record, pleadings, and testimony, we make the following

## Question of law involved

The only question involved in this case is whether section 2 of the Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1002, prohibits the issuance of new licenses to clubs when the quota of licenses is exceeded; or does the said act except clubs from the restrictive provisions provided therein?

## Discussion

The act of assembly under interpretation, being the Liquor License Quota Act of June 24, 1939, P. L. 806, contains a section (2 by number) which provides as follows:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; . . . Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

The interpretation given this section by the several common pleas courts of this Commonwealth has not been unanimous either for or against petitioner's application herein for a new club liquor license. While testimony taken in this case is replete with considerable narrative relating to the history of the applicant organization, the scope and character of its activities, the type and quality of its membership, and its broad interest in the social and moral well-being of its membership, and while these facts are most interesting and in some instances praiseworthy and reflect the high moral character and reputation of the applicant, they are not relevant to the issue in this case. The question here is one of law and not of fact.

The question of the construction of the Liquor License Quota Law came up for consideration in Delaware County in the case of In re Appeal of Fraternal Order of Orioles, Chester Nest No. 158, 31 Del. Co. 78. In that case as here the applicant met all the physical and other requirements of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, and the only question on which the case turned was one of law, as in the case at bar.

This court then held, under the opinion of the writer, now president judge, that (p. 81) :

"While we respect the opinion of some judges who have held that new club licenses may be issued without limitation, we prefer to cast our lot with the great majority who have ruled otherwise."

The reasoning of the said opinion of this court is too cogent and comprehensive to permit further amplification here.

Since the date of that opinion the legislature has made no change with reference to the Quota Law which is the particular problem before this court. If anything may be said with relation to the matter of the issuance of new licenses, the prevailing tendency in all

communities, as well as in courts during the past two years, is directed to a more rigid scrutiny in issuing licenses. Nowhere is there any evidence of an inclination to relax the law, whether by legislative action or court interpretation, in order to permit more liberal policy in this regard.

To the same effect as in the said Delaware County case are the decisions of courts in 14 other counties, to wit, Philadelphia, Montgomery, Bucks, Chester, Lehigh, Dauphin, Lancaster, Lawrence, Venango, Wyoming, Bedford, York, Fayette, and Clearfield. To the same effect is the opinion of the Attorney General of Pennsylvania, dated October 10, 1939.

It is said that, since the decision in the Delaware County case, there have been some 48 decisions construing said act and that by far the majority of such cases hold contrary to the decision in the Delaware County case. This conclusion is an obvious error. The fact of the matter is that there have been many more than 48 opinions, perhaps a hundred, rendered on the subject if a count is made of all opinions within each county on the same subject. In many counties, as in Philadelphia, Allegheny, Dauphin, Bucks, Berks, and now in Delaware County, the same question has been raised more than once and opinions have been filed in each case. A count of cases taken in this manner is without significance, as each decision does not represent a different county. It is to be noted that all counties surrounding Delaware County, to wit, Philadelphia, Montgomery, Bucks, and Chester, and all other counties contiguous to these counties, excepting Berks, hold to the same view. Any relaxation of the law in Delaware County in this regard would doubtless invite a tide, if not a typhoon, of applications of all stripes. An unfortunate situation is now involved where we find as a fact that at the present time the total number of retail liquor licenses now in effect in the City of Chester is 113; and that in addition thereto

there are 12 hotel liquor licenses, 24 club liquor licenses, and one club malt beverage license, making a total of 153 beer and liquor licenses in effect in the City of Chester, as against a quota of only 60.

The most recent opinions rendered on the subject have come from the courts in our adjoining counties of Bucks and Montgomery where, as in Delaware County, the same question has been raised for the second time.

In an opinion dated February 7, 1944, President Judge Hiram H. Keller of Bucks County, in In re Nace-Kraft Post No. 255, etc., 49 D. & C. 531, reconsidered and reaffirmed his previous decision in Appeal of Recreation Solidarity, Inc., no. 24, September term, 1939 (not reported). In the Nace-Kraft case, Judge Keller makes a thorough review of the cases on this subject, listing the outstanding opinions.

Again in Pottstown Post No. 780, Veterans of Foreign Wars, 50 D. & C. 491, 492, in an opinion dated January 11, 1944, President Judge Knight of the Montgomery County Court of Quarter Sessions, reaffirmed the decision of that court in a previous case of the same title reported in 55 Montg. 346, 36 D. & C. 593 (1939).

In the said opinion of January 11, 1944, that court said: "This court, in Pottstown Veterans Association License, 55 Montg. 346, 36 D. & C. 593 (1939), has already decided the first question adversely to the appellant. We are familiar with the fact that the courts of Lackawanna, Northampton, Washington, Luzerne, Schuylkill, Beaver, Erie, and Berks Counties have since reached a conclusion differing from ours in the interpretation of the Act of 1939, but on the other hand the courts of Bucks, York, Philadelphia, Westmoreland, Lehigh, Dauphin, Lancaster, Venango, Wyoming, Mercer, Bedford, and Delaware Counties take the same view that we did in interpreting the act. After reviewing our decision in Pottstown Veterans Association's application, we see no reason to

change our views, which are now the majority opinion on the subject."

The opinion of the writer in the Chester Nest case, supra, 31 Del. Co. 78, 85, very aptly, we think, states the following:

"It will therefore be observed that a license to sell liquor is not a property right and never has been. It is merely a privilege granted to a person by legislative enactment. It is within the police power of the Commonwealth to adopt by legislative decree or prohibition a restriction that no new liquor licenses shall be granted to every class but hotels as long as the quota prescribed in the said Act of Assembly has been exceeded.

"The contention of the appellant would lead to a condition where, after the quota had been passed, clubs already formed in a municipality could sell liquor equal in the aggregate to all other licensees. This certainly could not have been the intent of the Legislature as expressed in the Act of June 24, 1939, P. L. 806, providing for a limitation of the number of licenses issued and fixing a quota.

"The 1939 Act under consideration is, under Sec. 62 of the Statutory Construction Act, 46 P.S. 562, in pari materia with the Pennsylvania Liquor Control Act of 1933, Spec. Sess. P.L. 15, 47 P.S. 744-1 ff. and, therefore, the two acts are to be construed together. Subsection (a) of Section 3. of Art. 1 of that act, as amended, 47 P.S. 744-3 (a) provides:

" 'This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose.'

"Since the legislature considered the licensing of clubs necessary for the public welfare, then the Act of

1939 restricting the issuance of licenses must be construed liberally for the public welfare and strictly against those seeking the privilege of retailing liquor. So interpreting the Act of 1939, the clear provision in the last clause against licensing clubs must prevail over any doubt that might be created by the first clause.

"The presence of the words 'and clubs' in the first clause and not in the last, works to the detriment of appellant's case rather than to its advancement, for it. shows that the legislature had club licenses under consideration and it must be presumed to have intended to exclude them from the computation of a quota and to include them in the prohibition against obtaining new licenses."

*Conclusions of law*

1. The parties are properly before this court, the appeal having been filed in accordance with the provisions of the law.

2. The only question before the court is whether the Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1002, prohibits the issuance of new licenses to clubs when the quota of licenses is exceeded.

3. The quota of licenses for the City of Chester is 60 and the licenses in effect, calculated according to the provisions of said act, are 113, and the quota is therefore exceeded.

4. The record made in this case at the hearing de novo held before the court on December 17, 1943, does not disclose any new questions of law other than the said question.

5. The same question was decided by this court in the case of In re Appeal of Fraternal Order of Orioles, Chester Nest No. 158, 31 Del. Co. 78, against the position of this appellant and is therefore stare decisis on said opinion.

6. The appeal must be dismissed.